UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| | ) | Docket No.:   0974 3:13CR01959-001-WQH |
| RAMIREZ-Rivera, Alberto | ) | |
| | ) | |

**Prepared for:**   The Honorable William Q. Hayes
U.S. District Judge

**Prepared by:**   Crystal N. Smith
U.S. Probation Officer
San Diego, CA
(619) 557-6531
Crystal_Smith@casp.uscourts.gov

**Assistant U.S. Attorney**
Jeremy Herring
880 Front Street
Suite 6293
San Diego, CA 92101
(619) 557-5610

**Defense Counsel**
Gary Burcham (appointed)
964 5th Avenue
Suite 300
San Diego, CA 92101
619-699-5930

**Sentence Date:**   September 16, 2013, at 9:00 a.m.

**Offense:**   8 U.S.C. § 1326(a) and (b), Removed Alien Found in the United States, a Class C felony.

**Penalty:**   (Based on a prior conviction for an aggravated felony) 20 years' imprisonment; 3 years' supervised release; $250,000 fine; and a $100 special assessment.

**Arrest Date:**   April 29, 2013

**Release Status:**   In continuous federal custody since arrest; 141 days served as of 9/16/2013.

**Detainers:**   See Pending Charges Section

**Identifying Data:**



| | |
|---|---|
| **Date of Birth:** | June 12, 1976 |
| **Age:** | 37 |
| **Race:** | White |
| **Hispanic Origin:** | Hispanic origin |
| **Sex:** | Male |
| **Eye Color:** | Brown |
| **Hair Color:** | Black |
| **Height:** | 5ft. 8in. |
| **Weight:** | 180 lbs. |
| | |
| **SSN#:** | None |
| **FBI#:** | 38669WA3 |
| **USM#:** | 63535-308 |
| **CII#:** | CA A30661542 |
| **CA/ID#:** | B5050359 |
| **ICE#:** | A073871417 |
| **PACTS#:** | 252980 |
| | |
| **Education:** | None |
| **Citizenship:** | Mexico (Deported Alien) |
| **Country of Birth:** | Mexico |
| **Place of Birth:** | Guanajuato, Mexico |
| | |
| **Current Address:** | Imperial County Jail |
| | 328 Applestill Rd. |
| | El Centro, CA 92243 |
| | |
| **Legal Residence:** | Canon Azteca #3435 |
| | Tijuana, Mexico |
| | |
| **Alias(es):** | None. |
| | |
| **Alternate IDs:** | CA/Index: X8541829 (License/Driving Privilege Status: Susp. or Rev'k) |
| | DOB: 07/02/66; 07/12/1976 |

*Restrictions on Use and Redisclosure of Presentence Investigation Report*. Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

**This presentence report has taken into consideration the statutory factors listed at 18 U.S.C. § 3553(a) and the advisory sentencing guidelines.**

**PART A. THE OFFENSE**

### Charge(s) and Conviction(s)

1. On May 28, 2013, a one-count information was filed in the Southern District of California, charging Alberto RAMIREZ-Rivera with a violation of 8 U.S.C. § 1326 (a) and (b), Removed Alien Found in the United States.

2. On June 19, 2013, RAMIREZ pled guilty to the information.

### The Offense Conduct

3. The following information was obtained from a review of the discovery material provided by the U.S. Attorney's Office. Defense counsel had no additional information regarding the offense.

4. On April 29, 2013, United States Border Patrol (BPA) encountered RAMIREZ, in the United States, approximately 22 miles west of the Calexico, California, West Port of Entry. The agent identified himself and questioned the defendant as to his citizenship. BPA ascertained RAMIREZ to be a citizen of Mexico, illegally in the United States. He was subsequently arrested and transported to the El Centro, California, Border Patrol Station for further processing.

5. A records check, based on fingerprint and photograph comparison, revealed both a criminal and immigration history for RAMIREZ. The defendant had been previously removed to Mexico on November 7, 1997. No record was found indicating he had applied for proper permission to return to the U.S. after having been removed.

6. Post arrest, the defendant admitted to being a citizen of Mexico not in possession of any documentation allowing him to be, work, or reside in the United States. He intended to travel to Los Angeles, California to reside and look for work.

### Defendant's Statement of the Offense

7. On July 18, 2013, the defendant was interviewed, in the Spanish language, via video conference, while detained at the Imperial County Jail, with the assistance of a Spanish language interpreter. Also, present was his defense counsel.

8. On advice of counsel, RAMIREZ the factual basis for the offense as set forth in the plea agreement which reads, in summary, as follow: The defendant acknowledged that, he is an alien and, on April 29, 2013, he was found in the United States after knowingly and voluntarily reentering and remaining in the United States without permission. Additionally, he was removed to Mexico, on March 20, 2013, after suffering a felony

conviction for possession of marijuana for sale. RAMIREZ declined to provide a statement of remorse, motivation, and future plans at this time.

### Offense Level Computation

9. The 2012 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG § 1B1.11.

10. <u>Base Offense Level</u>: The guideline for 8 U.S.C. § 1326 is found at USSG § 2L1.2. Pursuant to USSG § 2L1.2(a), the base offense level is eight. **8**

11. <u>Specific Offense Characteristics</u>: Pursuant to USSG § 2L1.2 (b)(1)(B), a 12-level increase is applied if the defendant was previously deported following a conviction for a drug trafficking offense for which the sentence imposed was 13 months or less. However, if the conviction receives no criminal history points, the base offense level is increased by 8.

    On November 10, 1998, RAMIREZ was convicted of 11359, Possession of Marijuana for Sale, in the Superior Court of California, County of Los Angeles, Case No. BA173747. He was sentenced to 109 days' incarceration and was subsequently deported to Mexico on March 20, 2013. Therefore, an 8-level upward adjustment is recommended. **+8**

12. <u>Adjusted Offense Level</u>: **16**

13. <u>Adjustment for Acceptance of Responsibility</u>: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). **-2**

14. Based on the government's stated intention of bringing a formal motion at sentencing, the additional one-level reduction for acceptance of responsibility is recommended pursuant to USSG § 3E1.1(b). **-1**

15. <u>Total Offense Level:</u> **13**

### PART B. THE DEFENDANT'S CRIMINAL HISTORY

16. Unless otherwise indicated, the defendant was represented by defense counsel or waived attorney representation for the following case(s).

### Sources of Information

17. Computer clearances were conducted through the FBI, CII, California Department of Motor Vehicles (DMV), courts and law enforcement agencies. Relevant documents were requested and are referenced for the following entries.

18. On advice of counsel, the defendant declined to discuss the area of criminal history.

**Juvenile Adjudication(s)**

19. None known.

**Adult Criminal Conviction(s)**

| Date of Arrest | Charge/Agency | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|
| 20. 08/31/98 (Age 22) | 11359 H&S, Possession of Marijuana for Sale (fel.). Los Angeles, CA PD | Los Angeles Co. Sup. Crt., Case No. BA173747 11/10/98: Conv., 109 days jail, 36 mos. prob. | 4A1.2(e)(3) | **0** |

21. The Los Angeles Police Department (LAPD) received a phone call from a confidential informant stating that marijuana, in ounce quantities, was being sold from a residence. On August 31, 1998, police responded to the residence to conduct surveillance. Based on their observation, officers believed a drug transaction had occurred. Officers approached the house and, with permission of Maria Jaramillo (the defendant's girlfriend), conducted a search which yielded $572 in cash, marijuana (approximately 69.1 grams), and miscellaneous items used for the sale of narcotics. RAMIREZ later admitted to ownership of the marijuana.

| | | | | |
|---|---|---|---|---|
| 22. 10/05/11 (Age 35) | Ct. 1: 10801 VC, Chop Shop Operation (fel.); Cts. 2-4: 496d(a) PC, Receiving Stolen Property- Motor Vehicle (fel.); Ct. 5: 487(d)(1), Grand Theft Auto (fel.) Whittier, CA PD | Los Angeles Co. Sup. Crt. (Norwalk), Case No. VA121946 10/25/11: P/G to Cts. 1 &4, 3 yrs. prob., 1 yr. jail as to Ct. 1; 3 yrs. prob. as to Ct. 4 11/28/11: Dep. to MX 05/07/12: Prob. viol, prob. cont. 07/03/13: Prob. rev'k, no bail BW iss. | 4A1.1(b) | **2** |

23. RAMIREZ, along with co-defendants Luis Camacho and Gabriel Ribes were named in Counts One through Four. According to the felony complaint, the trio unlawfully bought and received two freightliner tractors and a trailer and operated a chop shop. Gabriel Ribes was named in Count Five, for unlawfully taking one of the freightliner tractors.

| 24. | 03/11/12 (Age 35) | Ct. 1: 8 U.S.C. § 1326(a) and (b), Illegal Re-Entry (fel.). Ct. 2: 8 U.S.C. § 1325(a), Illegal Entry (misd.). Immigration and Customs Enforcement (ICE) | U.S. Dist. Crt. (Arizona), Case No. 12-08230-001-JR-1 03/20/12: P/G to Ct. 2., 180 days BOP 09/07/12: Rel. to ICE | 4A1.1(b) | **2** |
|---|---|---|---|---|---|

25. On March 5, 2012, RAMIREZ was found near Douglas, Arizona without proper immigration documents. On March 11, 2012, he was found near Bowie, Arizona without permission to reenter. Records indicated he has been removed from the United States through Del Rio, Texas, International Bridge, on January 7, 2012.

### Criminal History Computation

26. The criminal convictions listed above result in four criminal history points.                         **4**

27. Pursuant to USSG § 4A1.1(d), two points are added because the instant offense was committed when the defendant was on probation in Case No. VA121946.                         **+2**

28. The total criminal history score is six.                         **6**

29. According to the Sentencing Table (USSG Ch.5, Pt.A), a criminal history score of six establishes a Criminal History Category III.                         **III**

### Other Law Enforcement Contacts

30. On May 17, 1994, the defendant was arrested by the Los Angeles County Sheriff for possession of a narcotic controlled substance (cocaine). Disposition is unknown.

31. On November 25, 2009, the defendant was arrested by the LAPD for 12500 VC, Driving without a License. Disposition is unknown.

### Pending Charges

32. As previously indicated, the defendant is on county probation in Case No. VA12194602. An active bench warrant was issued on July 3, 2013, and remains active. Records indicate the warrant was lodged for violation in the instant offense.

## PART C. OFFENDER CHARACTERISTICS

33. The following information was provided by the defendant during the presentence interview. Information. Information was also gathered from the defendant's probation report ('PSR') in Case No. VA12194602. Contact information to corroborate the defendant's information was not provided.

### **Immigration Information**

34. RAMIREZ stated he has never had a legal right to be in the United States. Discovery material indicates he was removed to Mexico on November 7, 1997, November 28, 2011 and January 7, 2012. He was last physically removed on March 20, 2013. Department of Homeland Security records note twelve apprehensions for the defendant, between 1994 and 2013. Neither Bureau of Prisons, nor discovery materials indicate a detainer/immigration hold was placed on the defendant.

### **Personal and Family Data**

35. Alberto RAMIREZ-Rivera reported being born on July 12, 1976 in Guadalajara, Jalisco, Mexico, to Jose Guadalupe Ramirez (age unknown) and Antonia Rivera (deceased). The defendant's mother passed away from cancer (type unknown) thirty years ago. His father resides in Los Angeles, California where he is a painter. He is believed to be in good health.

36. RAMIREZ identified seven full siblings with the surname Ramirez-Rivera. Maria, Sylvia, and Guadalupe are seamstresses; Patricia is a secretary; Yolanda is a housewife; Juan works in construction; and Miguel Angel works at a market. RAMIREZ could not recall his siblings' ages. All live in Los Angeles and are believed to be in good health.

37. RAMIREZ reported being raised by his older siblings. Although his father was present in his life, he noted that he was "hardly home," because he had to work. The defendant described his childhood as "fine" and stated that he had everything he needed. He reported no significant problems and said all of his material needs were met. His family is aware of his incarceration and has been supportive by providing his wife with money to support herself and their children.

38. RAMIREZ has been in a twenty-year relationship with Maria Jaramillo (age 47). She lives in Bell Gardens, California, where she receives government assistant to help support herself and the couple's three children. She is believed to be in good health. According to a police report, Ms. Jaramillo has been arrested for a drug-related offense and was on probation during the time of the defendant's 1998 arrest. The couple's children, Luis (age 17), Vanessa (age 15), and Angel (age 11) are students and believed to be in good health. The defendant commented that his children are United States citizens; however, Ms. Jaramillo is a citizen of Mexico. On advice of counsel, RAMIREZ declined to discuss his future plans regarding his family.

39. On advice of counsel, RAMIREZ declined to discuss his residential history. At this time, his future plans are unknown.

### **Physical Condition**

40. RAMIREZ described himself as being in "good" health, disavowing any history of serious illnesses, injuries, or medication regimen. On advice of counsel, he declined to discuss the presence of identifying marks. CII records indicate the defendant has a mole on his back.

### Mental and Emotional Health

41.  The defendant disavowed ever being diagnosed with depression or any other form of mental illness.

### Substance Abuse

42.  On advice of counsel, the defendant declined to discuss the area of substance abuse.

### Educational, Vocational and Special Skills

43.  RAMIREZ reported having no schooling. He explained that he attended school for two weeks and terminated his studies because he did not like school. Reportedly, he just "hung out in the streets" with friends. At the age of thirteen, he began working in the field of mechanics.

44.  Regarding future educational goals, the defendant would like to learn how to read and write (both Spanish and English).

### Employment Record

45.  Prior to his arrest, RAMIREZ was unemployed and being supported by his siblings. He noted that he repaired trailers, in Mexico, for two weeks prior to ceasing this employment. Further information is unknown.

46.  From 2008 to 2011, he reported a $45,000 annual, respectively, income for a trailer mechanic company. When asked for business identification information, RAMIREZ stated that his company, Angel's Trailer Repair. From 2006 to 2008, the defendant worked full-time, as an assistant mechanic, at United Trailer Repair in Bell Gardens, earning $8.00 per hour. Reportedly, he left after saving enough money to start Angel's Trailer Repair.

47.  From 2004 to 2006, RAMIREZ worked daily laborer positions. He stated that he waited in front of a Home Depot store, daily, looking for employment. From 2003 to 2004, he worked part-time with a roofing contractor, earning $500 per week. He was unable to recall the contact information for this employer.

### Financial Condition: Ability to Pay

48.  A financial affidavit was not filed in this case. RAMIREZ noted no assets or liabilities.. When queried on the materials used for his business, he stated that the vehicle used was registered under his nephew's name. In addition, he noted no savings or checking accounts. This writer notes the defendant has court appointed counsel and faces deportation to Mexico following the completion of a sentence in this case. In view of the above, and with the uncertain nature of the defendant's prospects upon return to Mexico, imposition of a fine does not appear to be a practical sanction.

**PART D. SENTENCING OPTIONS**

**The guideline options are advisory pursuant to <u>United States v. Booker</u>.**

    **<u>Custody</u>**

49.    <u>Statutory Provisions</u>:  The maximum term of imprisonment is 20 years.  8 U.S.C. § 1326.

50.    <u>Guideline Provisions</u>:  Based on a total offense level of 13 and a Criminal History Category III, **the guideline range for imprisonment is 18 to 24 months.**

    **<u>Supervised Release</u>**

51.    <u>Statutory Provisions</u>:  If a sentence of imprisonment is imposed, a term of not more than three years' supervised release is authorized.  18 U.S.C. § 3583(b)(2).

52.    <u>Guideline Provisions</u>:  If a sentence of imprisonment of one year or less is imposed, a term of supervised release of at least one year but not more than three years is optional. Supervised release is required if the sentence exceeds one year.  USSG §§ 5D1.1(a) and(b), and 5D1.2(a)(2). The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment. USSG § 5D1.1(c).

    **<u>Probation</u>**

53.    <u>Statutory Provisions</u>:  The defendant is eligible for not less than one nor more than five years' probation by statute. 18 U.S.C. § 3561(c)(1).  Because the offense is a felony, the statute requires that one of the following be imposed as a condition of probation: make restitution, give notice to victims of the offense pursuant to 18 U.S.C.  § 3555, or reside, or refrain from residing, in a specific place or area, unless extraordinary circumstances exist that would make such a condition plainly unreasonable, in which event the court shall impose one or more of the other conditions set forth under subsection (b). 18 U.S.C. § 3563(a)(2).

54.    <u>Guideline Provisions</u>:  Because the minimum of the guideline range is ten months or more, the defendant is not eligible for probation.  USSG § 5B1.1, comment. (n.2).

    **<u>Fine</u>**

55.    <u>Statutory Provisions</u>:  The maximum fine is $250,000.  18 U.S.C. § 3517(b)(3).

56.    <u>Guideline Provisions</u>:  Based on a total offense level of 13, the guideline range of the fine is $3,000 to $30,000.  USSG § 5E1.2.

    **<u>Impact of Plea Agreement</u>**

57.    Based on the written plea agreement, the parties have agreed to the following advisory guideline calculations:

   1. Base Offense Level, USSG § 2L1.2(a)                                   8
   2. Prior Conviction, USSG § 2L1.2(b)(1)(A)(B)(C)(D)(E)                   --
      [Specific Offense Characteristic to be determined by the
      Court at the time of sentencing following preparation of a
      PSR]
   3. Acceptance of Responsibility, USSG § 3E1.1(a) & (b)           -3 or -2
   4. Departure for Fast Track, USSG § 5K3.1                              -4

58. There is no agreement as to the defendant's criminal history category.

59. The parties agree that the defendant may seek further adjustments or departures under the United States Sentencing Guidelines. The Government is free to oppose any such adjustments or departures. The parties agree that the defendant shall not seek any variances or sentencing reductions under 18 U.S.C. § 3553. If defendant seeks any variances or sentence reductions under 18 U.S.C. § 3553, it shall be deemed a breach of the plea agreement, and the Government is free to withdraw its recommendation for a Fast-Track departure.

60. The Government agrees to recommend that defendant be sentenced to the low end of the advisory guideline range as calculated by the Government at the time of sentencing, pursuant to this agreement. The defendant agrees to recommend a sentence within the advisory guideline range as calculated by the defendant at the time of sentencing, pursuant to this agreement.

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

61. The government is recommending a four-level "fast-track" departure pursuant to USSG § 5K3.1.

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

62. The instant offense represents the defendant's second immigration conviction. Keeping in all mind 18 U.S.C. § 3553(a) factors, including the nature of the offense; the defendant's personal characteristics (noting his criminal history, immigration record, and the last sentence imposed for a similar offense (a 180-day sentence); and the need for deterrence, a sentence within the advisory guideline range will be recommended.

**PROBATION OFFICER'S ANALYSIS/JUSTIFICATION**

63. **In analyzing this case and formulating a recommendation, the probation officer has considered the advisory sentencing guidelines and pertinent policy statement(s) issued by the Sentencing Commission in effect on the date of sentencing, along with the factors listed at 18 U.S.C. § 3553(a).**

64. Alberto RAMIREZ-Rivera finds himself before the court for after having pled guilty to removed alien found in the United States. His reasons for returning are unknown as he

      declined to comment on his motivation. Post arrest, he commented that he returned to work and live in Los Angeles. A review of the nature and circumstances of the offense and the history and characteristics of the defendant do not reveal any mitigating. In aggravation, the defendant committed this offense while under the criminal justice system. RAMIREZ has accepted responsibility for his actions by adopting the factual basis in his plea agreement. None of his personal information, save his criminal history has been verified.  He reports to being supported by his siblings, and having no education.

65.     The defendant's wife, who is also on probation for an unknown drug-related incident, and children reside in the Central District of California, and are being supported by government assistance and the defendant's siblings.  RAMIREZ has no viable release plan, and there is significant concern that he will once again find himself illegally in the United States, to reunite with his family.  He is cautioned that his guideline range will only increase with each incident.

66.     The advisory guideline range for imprisonment is 18 to 24 months. After taking into account the government's recommended four-level downward fast track departure per USSG § 5K3.1, the resulting guideline range is 8 to 14 months custody.  In consideration of all relevant factors, including the facts of the offense, and his prior criminal history, a 13 months and 1 day sentence appears adequate and is thus recommended. This sanction is meant to reflect the seriousness of this offense and to deter the defendant from illegally re-entering into this country.

67.     Under USSG § 5D1.1(c), the court ordinarily should not impose a term of supervised release in a case where the defendant is a deportable alien who likely will be deported after imprisonment. Therefore, no term of supervised release is recommended.

**SENTENCING RECOMMENDATION**

    <u>**Custody**</u>

68.     <u>Statutory Maximum</u>:    20 years

69.     <u>Guideline Range</u>:    8 to 14 months (USSG § 5K3.1)

70.     <u>Recommendation</u>:    13 months and 1 day

    <u>**Supervised Release**</u>

71.     <u>Statutory Maximum</u>:    3 years

72.     <u>Guideline Range</u>:    1 to 3 years

73.     <u>Recommendation</u>:    None

**Fine**

| | | |
|---|---|---|
| 74. | Statutory Maximum: | $250,000 |
| 75. | Guideline Range: | $1,000 to $10,000 (USSG § 5K3.1) |
| 76. | Recommendation: | $0 |

**Special Assessment**     $100

Respectfully Submitted,

DAVID J. SULTZBAUGH
CHIEF PROBATION OFFICER

By:  *[signature]*

Crystal N. Smith
U.S. Probation Officer

Reviewed and Approved:

*[signature]*
Lynette M. Williams
Supervising U.S. Probation Officer
August 6, 2013

PROB 2A SD
**SENTENCING SUMMARY CHART**

USPO   x
AUSA
DEF

Defendant's Name: RAMIREZ-Rivera, Alberto     Docket no. 0974 3:13CR01959-001-WQH

Guideline Manual Used: November 1, 2012     Agree with USPO Calculations:

Base Offense Level: (Drug Quantity, if Applicable: USSG § 2L1.2(a), Removed Alien Found in the U.S. )    8

Specific Offense Characteristics: USSG § 2L1.2(b)(1)(B), Prior Drug Trafficking Offense <13 months or less – No CH Points    +8

Victim Related Adjustment:

Adjustment for Role in the Offense:

Adjustment for Obstruction of Justice:

Adjustment for Reckless Endangerment During Flight:

Adjusted Offense Level:    16

☐ Combined (Multiple Counts)    ☐ Career Offender    ☐ Armed Career Criminal

Adjustment for Acceptance of Responsibility:    -3

Total Offense Level:    13

Criminal History Score:    6

Criminal History Category:    III

☐ Career Offender    ☐ Armed Career Criminal

Guideline Range:    from 18

(Range limited by: ☐ minimum mandatory    ☐ stat maximum)    to 24 mths

Departures:

USSG § 5K3.1, Fast Track    -4

Resulting Guideline Range:    from 8

   to 14 mths